## CIRCUIT COURT OF THE CITY OF WINCHESTER

WMW Investments etc.

v.

Board of Zoning Appeals et al.

March 31, 1988

Case No. (Law) 87-L-114

By JUDGE PERRY W. SARVER

The captioned matter is a petition for a writ of certiorari and a declaratory judgment arising out of proceedings before the Board of Zoning Appeals of the City of Winchester ("Board"). The Petitioner is WMW Investments ("WMW") a Virginia partnership, and the operator of a Hardee's restaurant, by franchise, on the subject property.

The writ of certiorari was granted pursuant to Va. Code § 15.1-497 on September 28, 1987, and challenges Board's actions in denying WMW's request for a special exception pursuant to Section 20-2-5 of the Winchester zoning ordinance.

WMW, having exhausted its administrative remedies, also asks the Court to issue a Declaratory Judgment. *Matthews v. Board of Zoning Appeals*, 218 Va. 270-284, 237 S.E.2d 128 at 136 (1977).

The issue in controversy, is whether WMW has direct access to U.S. No. 11, a highway defined as a thoroughfare street in the Comprehensive Plan of the City of Winchester and thereby comes under the exception set forth in Section 18-8-6.2b permitting it to erect one freestanding sign as provided for therein.

The parties agree that the Court should issue its declaratory judgment first, since if such allows WMW to erect a freestanding sign under the exception, the issue

raised in the petition for writ of certiorari will become moot.

I am of the opinion that Board has correctly interpreted Section 18-8-6.2b and that WMW does not have direct access to U.S. 11. The parties agree that U.S. 11 (also known as Valley Avenue) is a thoroughfare street. There is no question as to the validity of Section 18-8-6.2b, the only question being how this section should be applied as to WMW.

Counsel have cited numerous cases decided by the Virginia Supreme Court and have further made reference to Michie's Jurisprudence and American Jurisprudence, Second Edition. While counsel may differ in their argument as to whether a zoning ordinance should be liberally or strictly construed, there is no disagreement to the proposition that zoning laws should be given a fair and reasonable construction in the light of the manifest intent of the legislative body enacting them, the object sought to be attained, the natural import of the words used in common and accepted usage, the setting in which such words are employed, and the general structure of the ordinance as a whole. *Mooreland v. Young*, 197 Va. 771 at 775, 91 S.E.2d 438 at 441 (1956); *Lawrence Transf. & Storage Corp. v. Board of Zoning Appeals*, 229 Va. 568, 331 S.E.2d 460 (1985); 82 Am. Jur. 2d. *Zoning and Planning* § 68, p. 498.

In those general principles of construction set forth in 82 Am. Jur. 2d § 68, it is set forth on page 499 that:

A particular part of, or particular language in, a zoning law should not be construed out of context, and any particular word or phrase in a zoning ordinance should be construed with due regard to its context and so as to harmonize, if possible, the language under consideration with all other parts of the ordinance.

The obvious purpose of this section is to regulate the number of freestanding signs to be erected in shopping centers or in connection with any building housing more than three tenants. The businesses in the shopping center (or building) are required to share one sign, which must show the name of the shopping center, the building and/or

business uses within the center or building. The section contemplates that the one sign shall serve the purpose of directing attention to the premises shared by the various businesses and that individual signs are prohibited.

WMW's representative at the Board's hearing on June 10, 1987, recognized the necessity to control the number of signs in shopping centers (Tr. p. 3), as did the Board's chairman (Tr. p. 18).

The only exception is when an individual enterprise has direct access to a highway defined as a thoroughfare street in the comprehensive plan, then such individual enterprise is entitled to one free-standing sign as prescribed in Section 18-8-6.2b.

If the individual enterprise has direct access to a thoroughfare street, then it should also have an individual freestanding sign to direct business invitees to its direct access. It is reasonable to assume that the shopping center sign will be placed at or in close proximity to the entrance to the common areas. Such sign will be of little or no value to a business that uses another means of access to its premises and will be without a sign directing business invitees to its premises. This potential inequity is avoided by the adoption of the exception in 18-8-6.2b.

WMW states that it comes within this exception because its leasehold estate fronts on U.S. 11. Counsel for WMW and Board both furnished definitions of "access" from recognized lay dictionaries and also from Black's Law dictionary.

Given the obvious intent of this Section 18-8-6.2, et seq. and its objective, direct access must be interpreted as not just a right to enter the thoroughfare street or highway but the actual use of this right.

The Court finds that the Georgia Supreme Court's interpretation of the word "access" in *J.B. Stallings, et al. v. Prime America Corporation*, 229 Ga. 430, 192 S.E.2d 147, is a reasonable interpretation and one that should be followed in this case. The court in *Stallings* at page 149 stated that the word "access" means one thing in the area of real property law and means an entirely different thing in the area of zoning law. In *Stallings*, the landowner had two rights of access to his property under a legal definition but had only one access under

the zoning ordinance if he utilized his real estate in the manner shown in his plans.

In the case now before the Court, while the plat, or site plan shows WMW's property as abutting on U.S. 11, a means of direct access is not shown, and the only means of access from WMW's tract is over the leasor's real estate and then to U.S. 11. The most that can be said is that WMW may have a right to direct access assuming that the necessary permits can be obtained for curb cuts.

Thus the court interprets direct access, allowing an individual enterprise to erect a sign pursuant to the exception, to mean that it is in fact utilizing a separate means of access, i.e., one used solely for that enterprise's property.

Counsel for Board shall prepare an order declaring that WMW does not have direct access to a highway defined as a thoroughfare street in the Comprehensive Plan and thus is not entitled to one freestanding sign.